UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **JUSTIN MARTIN,** | **CIVIL ACTION NO. 5:12-117-KKC** |
| **Plaintiff,** | |
| V. | **OPINION & ORDER** |
| **ANDRE PATTERSON, individually, and as MADISON COUNTY DEPUTY SHERIFF,** | |
| **Defendant.** | |

*** *** ***

Before the Court are several motions in limine filed by both the plaintiff and defendant (DE 38, 44, 55, & 57), which seek a variety of evidentiary rulings prior to the trial that is scheduled for March 10, 2014.

## BACKGROUND

This case arises from an incident in June of 2011, where the plaintiff—Justin Martin—was arrested by the defendant, Deputy Sheriff Andre Patterson, for fraudulent use of credit cards and theft. During the course of his arrest, Martin actively resisted and was subsequently found delinquent in a juvenile adjudication by the Madison District Court for resisting arrest in violation of K.R.S. § 520.090. Specifically, the state-court judge found that Martin

> intentionally acted and did in fact attempt to prevent this peace officer acting under the color of his official authority to effect an arrest on him, and he used force and violence against the police officer by way of struggling, he started to run.

(DE 44-4, at 48–49). The judge continued:

> [Martin] was as unsuccessful at running away from the police as he was at using that credit card that night. He tried to get away from him, Sergeant Patterson grabbed ahold of him, and then basically it was on, and he struggled all the way across the parking lot.
>
> . . .
>
> So I find [Martin] delinquent of resisting arrest, and beyond any reasonable doubt, matter of fact, it's beyond any doubt in my mind, and then not to mention the fact that the statute does prohibit anyone from acting in a manner that would create a substantial risk of causing physical injury to a peace officer or to another, and the testimony from both sides actually establishes that as well. So I find him delinquent of that.

(DE 44-4, at 49–50).

After being found delinquent by the Madison District Court for resisting arrest, Martin brought this suit against Patterson in both his individual and official capacity as a Madison County Deputy Sheriff. He alleges claims under § 1983 for excessive force and state-law claims of battery and intentional infliction of emotional distress. On October 9, 2013, this Court entered an order granting in part and denying in part Patterson's motion for summary judgment. (DE 31). This motion raised several issues, one of which the Court revisits todays: the collateral estoppel effect of Martin's prior juvenile delinquency for resisting arrest.

On January 9, 2014, a pretrial conference was held in which a number of issues raised in the pending motions were discussed. During this hearing, the Court ruled on three issues raised by the pending motions, and reserved ruling on the rest. Additionally, the Court took testimony from Jeffrey Todd Purgerson, a witness that Martin intends to use at trial to authenticate a piece of video evidence, but whom Patterson contends cannot testify due to Martin's failure to disclose his name during discovery.

Remaining for this Court to decide are seven issues raised by the parties throughout four motions. Beginning with those made by the plaintiff, the Court will analyze each motion in turn.

## ANALYSIS

### A. Martin's Motions in Limine (DE 38 & 57)

Martin has filed two motions in limine. In the first motion (DE 38), Martin requests that the Court (1) prohibit Patterson from referring to the juvenile case underlying the instant matter where Martin pled delinquent to theft of credit cards and was found delinquent of resisting arrest by the Madison District Court; (2) prohibit any reference to Martin's school and disciplinary record; (3) and allow admission of video footage taken from a Shell Mart security camera. Martin also moved the Court to exclude reference to any part of his criminal or juvenile record that does not pertain to this case, and on the defendant's representation that it does not intend to introduce such evidence the Court denied this motion as moot during the January 9 conference.

His second motion in limine seeks to prohibit Patterson from raising "justification" as a defensive to the excessive force claim, and in doing so prohibit Patterson from referring to Martin's resisting arrest delinquency to explain his conduct. To this end, Martin's second motion relates back to his first, providing an additional reason for why this Court should prohibit Patterson from presenting evidence related to his resisting arrest delinquency.

*1. Patterson Can Introduce Evidence Related to Martin's Underlying Juvenile Proceeding and Criminal Behavior*

Martin raises two issues regarding Patterson's ability to introduce evidence of underlying juvenile proceeding. The first issue is whether Patterson can introduce evidence of the resisting arrest delinquency, and the second is whether Patterson can introduce

evidence—including an admission of guilt by Martin—relating to the credit card theft and fraud offenses. Although these issues are similar, they raise distinct questions that the Court will analyze separately.

Martin's motion is based on a two-fold argument. First he relies on Rule 609(d) of the Federal Rules of evidence to support excluding any evidence of his prior delinquencies. Rule 609(d) permits the use of juvenile adjudications to impeach a witness in only a number of limited circumstances. But Patterson has no intention of using either the credit card theft or resisting arrest deliquency to impeach Martin. Rather, evidence of these delinquencies will be offered at trial to prove Patterson's substantive defense by showing that he did not use excessive force when arresting an actively-resisting Martin who admitted to stealing credit cards. Rule 609(d), therefore, has no bearing on this case.

Alternatively, Martin seeks exclusion under Rule 403 on the grounds that its probative value is substantially outweighed by the danger of unfair prejudice. *See* FRE 403. In doing so, he relies on *Powell v. Levit*, 640 F.2d 239 (9th Cir. 1981), a case where the Ninth Circuit Court of Appeals excluded evidence of *unrelated* criminal offenses on the grounds that such evidence is "clearly prejudicial to [the plaintiff's] chances of receiving fair consideration from the jury." *Id* at 241. Martin's reliance on this case, however, is mistaken, as Patterson does not seek to introduce evidence of unrelated criminal behavior. Instead, the evidence at issue here relates to criminal behavior arising out of the exact incident this case is based on. While evidence of *unrelated* criminal conduct might create unfair prejudice and offer little probative value, this is not the case here.

There is no doubt that Martin's juvenile delinquency for resisting arrest is relevant to the claims brought in this case. Patterson is accused of using excessive force in arresting Martin, and this cause of action requires that the trier of fact determine whether

4

Patterson's use of force was reasonable in light of the totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). In making this determination, it is certainly relevant that the Madison District Court found that Martin resisted arrest, and in fact "used force and violence against the police officer by way of struggling" (DE 44-4, at 49). The reasonableness of Patterson's force must be assessed relative to Martin's conduct, and Patterson is therefore entitled to present as a defense the fact that a court of law found Martin delinquent of resisting arrest. As the Court of Appeals has said, in an excessive force case a "conviction for resisting arrest [is] admissible for two reasons: first, the circumstances surrounding that arrest were critical to the determination of whether the officers used excessive force in arresting [the plaintiff]; and second, because [the plaintiff] was found guilty of resisting arrest, he was precluded from relitigating that issue in this action." *Greene v. Distelhorst*, 116 F.3d 1480, 1997 WL 351298, at *3 (6th Cir. 1987) (unpublished).

In addition to excluding evidence of his resisting arrest delinquency, Martins seeks to exclude evidence of his delinquency for credit card theft and fraud, along with any admissions he made regarding these offenses either to Patterson or during his deposition. Rather than introduce this evidence into the record, he would simply stipulate to the fact that Patterson had lawful cause to make the initial arrest. As with the resisting arrest delinquency, he mistakenly relies on Rule 609(d) to exclude any evidence of his credit card theft. Beyond the reasons stated above regarding the inapplicability of Rule 609(d), this motion is misguided given that Martin seeks to exclude admissions made during his

5

deposition, which was taken during the present action. Even if this evidence were used for impeachment purposes, it is not evidence of a juvenile adjudication subject to Rule 609(d).

Furthermore, Martin cannot simply stipulate to the legality of the arrest in an effort to exclude evidence of the crime for which he was arrested. Because an excessive force case requires analyzing the totality of the circumstances in order to determine the reasonableness of the officer's actions, "[t]he inquiry . . . may include an examination of the 'facts and circumstances of each particular case, *including the severity of the crime at issue*, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Walker v. Mulvihill*, 83 F.3d 423, 1996 WL 200288 at *3, No. 94-1508 (6th Cir. Apr. 24, 1996) (unpublished) (emphasis added) (quoting *Graham*, 490 U.S. at 396) (citing *Patrick v. City of Detroit*, 906 F.2d 1108, 1115 (6th Cir. 1990)). Patterson is entitled to present the complete picture of the circumstances surrounding the arrest to defend himself from the charge, and this Court will not "deprive [him] of [his] legitimate right to place before the jury the circumstances and atmosphere of [his defense], replacing it with a sterile or laboratory atmosphere." *See In re Beverly Hills Fire Litigation*, 695 F.2d 207, 217 (6th Cir. 1982); *see also Patrick*, 906 F.2d at 1115 (explaining that the reasonableness standard "is a fact-specific inquiry that depends on factors such as the severity of the crime at issue, whether the suspect poses a threat to anyone, and whether the suspect is attempting to escape or is resisting arrest"). Put simply, Martin is the one who brought this case to court and placed his conduct under scrutiny. He cannot now claim that evidence directly related to the incident in question is too prejudicial, thereby denying Patterson a fair opportunity to defend himself from the allegations.

For these reasons, the Court will deny Martin's motion to prohibit Patterson from introducing any evidence relating to the underlying criminal behavior in this case.

### 2. Introduction of School and Disciplinary Records

Martin moves the Court to prohibit introduction of his school and disciplinary records. Patterson has indicated he has no intention of introducing this evidence unless it becomes relevant for rebuttal, such as if Martin at trial chooses "to portray himself as obedient to authority figures, as a good student, or as lacking a prior history of fighting." (DE 46, at 2). Accordingly, the Court will deny as moot Martin's motion. If the defendant believes during the course of trial that this evidence has become relevant, he is directed to approach the bench before attempting to introduce it.

### 3. Admission of the Shell Mart Video

Finally, Martin moves the Court to allow admission of security camera footage taken from the Shell Mart where he was arrested. Patterson objects to admission due to the fact that it does not present a continuous depiction of the entire arrest, and is therefore likely to confuse and mislead the jury.

The videos at issue here (DE 43) were taken from motion-sensitive security cameras affixed to various locations around the Shell Mart, two of which were placed in the parking lot.[1] The first video[2] begins at timestamp 04:39:49 and depicts Patterson escorting Martin out of the Shell Mart and to the far end of the parking lot—out of view of the camera. Because these cameras are motion-sensitive, the video stops once Martin and Patterson

---

[1] Technically the footage is comprised of fourteen different videos, only two of which are relevant. The videos have been conventionally filed at Docket Entry 43 on a CD. The CD contains three folders, and the relevant videos are located in the folder marked "Disc 1 - East Parking Lot Camera." Inside there are nine separate videos. The two videos are "credit card fraud arrest7" and "credit card fraud arrest6."

[2] The first video is "credit card fraud arrest7" and begins at timestamp 04:39:49.

move out of its sight at 04:40:23. The next video[3] picks up approximately forty seconds later, at 04:41:04, and shows Patterson pulling a resisting Martin across the lot. Martin is seen resisting before going limp, at which point Patterson drags him the rest of the way. Martin is then seen jumping up from the ground before being restrained again by the officers.

Patterson's objection is straightforward: the missing forty seconds are crucial to determining whether or not his force was reasonable, because that forty seconds contains the period during which Martin is first placed under arrest and began violently resisting Patterson's attempts at restraining him. An excessive force claim requires analyzing the *totality* of the circumstances, and this video only shows Patterson's actions after Martin began resisting. Thus, Patterson contends that this evidence should be excluded even without a showing that it was manipulated simply because its incompleteness makes it highly misleading.

The problem with this footage is not simply that it has a portion of it missing, but that the missing portion is crucial to the particular claims in this case. As explained above, an excessive force case requires analyzing Patterson's use of force in light of the totality of the circumstances to determine if it was reasonable. By the time the video begins, Patterson's use of force had already escalated in response to Martin's unseen resistance. Thus, the video has limited probative value—if any at all—because a viewer is unable to weigh Patterson's actions in light of the off-camera resistance. Moreover, the compelling nature of pictographic evidence such as video footage is substantially likely to mislead and confuse a jury as it displays only a portion of the circumstances to the exclusion of other highly-relevant details. For these reasons, the Court finds that any probative value of video

---

[3] The second video is "credit card fraud arrest6" and begins at timestamp 04:41:04.

footage is substantially outweighed by the likelihood it will mislead and confuse the jury, and the plaintiff's motion to admit will accordingly be denied.

### 4. Motion to Prevent Patterson from Raising "Justification" as a Defense

In his second motion in limine (DE 57), Martin argues that Patterson should be precluded from raising "justification" as a defense, thereby preventing him from referring to Martin's resisting arrest delinquency in order to justify his use of force. He contends that Patterson cannot claim his "excessive force [was] justified" because he failed to raise this defense in his answer. But Patterson has not claimed his excessive force was justified—*excessive* force by its definition could never be justified. Rather, Patterson's argument throughout the proceedings has been that his force was *not excessive* in light Martin's resistance; he has denied using excessive force at all. Thus, to the extent that Patterson intends to introduce evidence relating to Martin's resistance, it is to prove that his force was reasonable, not that it was excessive-but-justified, and Martin's motion will be denied.

## B. The Defendant's Motions in Limine (DE 44 and 55)

The defendant has filed two motions in limine. The first motion (DE 44) raises four issues for the Court, while the second motion merely restates its position on excluding the Shell Mart video from trial. (DE 55). Because the Court has denied the plaintiff's request to admit the Shell Mart video, Patterson's second motion in limine will be denied as moot.

The remaining motion asks the Court to rule on four separate questions. First, Patterson requests that the jury in this case be instructed to accept as fact that Martin resisted arrested, and that the Court prohibit Martin from presenting evidence contrary to this fact. Second, Patterson seeks to have Martin precluded from introducing any evidence that he sustained a wrist fracture from this incident. Third, Patterson moves to limit Martin's claim for damages, allowing him to only seek $100,000 for pain and suffering, and

9

prohibit him from introducing evidence of medical damages at trial. Finally, Patterson moves the Court to prevent Martin from introducing evidence of a prior citizen complaint made against him. At a hearing held on January 9, 2014, Martin's counsel indicated that it did not intend to introduce this evidence, and this request for relief will therefore be denied as moot.

### *1. The Collateral Estoppel Effect of Martin's Prior Delinquency for Resisting Arrest*

A persistent question in this case has been what effect should be given to Martin's underlying delinquency for resisting arrest. In a prior order, this Court denied the defendant's motion for summary judgment where he argued that Martin was precluded from bringing suit at all under the doctrine of collateral estoppel. (DE 31). The crux of that ruling centered around the fact that a conviction for resisting arrest under Kentucky law does not *necessarily* preclude a claim that the officer used excessive force. That is to say, an individual might be guilty of resisting arrest despite the fact that the officer's force was excessive. Patterson, however, now moves the Court for a different kind of relief based on the doctrine of collateral estoppel. He seeks to have the jury instructed that it must accept as fact that Martin resisted arrest, and further, he asks for Martin to be precluded from offering any evidence inconsistent with this fact.

Collateral estoppel prevents a party from getting a second bite at the apple by prohibiting attempts to relitigate an issue of law or fact already decided by another court. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."). This doctrine applies "even if the second suit is for a different cause of action," and requires that a "fact once so determined must, as between the same parties or their privies,

be taken as *conclusively established.*" *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48–49 (1897). "[I]ssues actually litigated in a state-court proceeding are entitled to preclusive effect in a subsequent federal § 1983 suit to the extent provided by the law of preclusion in the state where the judgment was rendered." *Donovan v. Thames*, 105 F.3d 291, 294 (6th Cir. 1997). And under Kentucky law, "a criminal conviction may be used for purposes of collateral estoppel in later civil proceedings." *Id.* (quoting *Gossage v. Roberts*, 904 S.W.2d 246, 248 (Ky. Ct. App. 1995).

In this case, the Madison District Court has already decided that Martin resisted arrest. In fact, the court went further so as to hold that Martin

> intentionally acted and did in fact attempt to prevent this peace officer acting under the color of his official authority to effect an arrest on him, and he used force and violence against the police officer by way of struggling, he started to run. . . . [Martin] was as unsuccessful at running away from the police as he was at using that credit card that night. He tried to get away from him, Sergeant Patterson grabbed ahold of him, and then basically it was on, and he struggled all the way across the parking lot.
>
> . . .
>
> So I find [Martin] delinquent of resisting arrest, and beyond any reasonable doubt, matter of fact, it's beyond any doubt in my mind, and then not to mention the fact that the statute does prohibit anyone from acting in a manner that would create a substantial risk of causing physical injury to a peace officer or to another, and the testimony from both sides actually establishes that as well. So I find him delinquent of that.

(DE 44-4, at 48–50). Notably, the Court found that when Martin resisted arrest, "he used force and violence against the police officer by way of struggling," he tried to run, and he "act[ed] in a manner that would create a substantial risk of causing physical injury to a peace officer or another." These are all issues decided by the Madison District Court and subject to collateral estoppel in the event that they arise in subsequent proceedings.

Previously, this Court denied the defendant's motion for summary judgment where he argued that the delinquency for resisting arrest necessarily precluded a claim for excessive force. This ruling, however, does not open the door for Martin to relitigate the issues already decided by the Madison District Court, which include the fact that he resisted, struggled, used force, attempted to run, and placed officer Patterson and others in substantial risk of harm. These facts related to Martin's conduct have been established by the Madison District Court and are *conclusive* in the event that they arise in the instant case. In presenting his case before the jury, Martin cannot attempt to introduce evidence, whether by testimony or other means, that contradicts these facts. As the Court of Appeals has said, "[B]ecause [Martin] was found guilty of resisting arrest, he [is] precluded from relitigating that issue in this action." *Greene v. Distelhorst*, 116 F.3d 1480, 1997 WL 351298, at *3, No. 96-3044 (6th Cir. June 23, 1997) (unpublished).

In objecting to Patterson's motion, Martin argues that collateral estoppel is not relevant in this case because (1) there was no federal right litigated in the state-court action; (2) the issue in this case is not the same as that in state court; and (3) evidence of the juvenile delinquency is barred by Rule 403 and Rule 609(d). The first two arguments are without merit, and the applicability of Rules 609(d) and 403 to Martin's delinquency has already been rejected.[4]

First, collateral estoppel does not require that the prior court adjudicate a federal right. In fact, the law is clear that federal courts must give full effect to a prior state-court proceeding to the same extent that a state court would. *See Donovan*, 105 F.3d at 294. Martin is also mistaken in claiming that the issues between the two cases are not the same.

---

[4] Moreover, whether the doctrine of collateral estoppel restricts the evidence Martin may present at trial is wholly unrelated to evidentiary rules that govern what evidence Patterson may rely on in presenting his own case.

While it is true that resisting arrest and excessive force raise different issues, whether or not Martin resisted arrest is the same issue in the present case as it was in Madison District Court. As discussed above, excessive force claims *require* analyzing the conduct of Martin to determine if Patterson's use of force was reasonable. Thus, whether or not Martin resisted arrest is a component of the present case and exactly the same issue as it appeared in Madison District Court. This Court, therefore, must give full effect to the state-court proceeding under the doctrine of collateral estoppel, and Martin is precluded from presenting any evidence at trial inconsistent with the fact that he resisted arrested by way of struggling, using force, and placing Patterson in substantial risk of harm.

Patterson also requests that the jury be instructed to accept as fact that Martin resisted arrest. The Court will deny the request at this time, but will revisit this issue if necessary at its conference regarding instructions provided the defendant puts forth an appropriate motion.

### 2. *Evidence of Broken Wrist*

Patterson moves the Court to prevent Martin or any other lay witness from testifying to the fact that he fractured his wrist—testimony based only on the recollection that a physician told him this. Martin alleges that he fractured his wrist and bases this claim, according to his deposition testimony, on a trip to the emergency room the day following the incident. When asked why he believes his wrist was fractured, Martin stated, "They [the emergency room personnel] told me that it was fractured." (DE 44-2, at 12). This statement, however, is inadmissible hearsay as offered to prove that Martin's sustained a fracture to his wrist.

Martin makes two arguments as to why testimony such as this, whether offered by him, his mother, or another lay witness, is not hearsay. First, he contends that if the testimony

13

describes questions or commands made by a doctor, it cannot be hearsay because questions and commands are not assertive statements. As an example, Martin suggests that his mother might testify that a physician asked Martin, "What did you do to fracture your wrist?" According to Martin, this would not be hearsay because it is presented as a question rather than an assertive statement. Further, Martin points to Rule 803(4)(a), which exempts from the rule against hearsay statements made for a medical diagnosis or treatment.

Both of these arguments are in error. To begin, whether or not the testimony constitutes hearsay is not determined solely on the grammatical form it takes. Although it is true that questions generally are not hearsay, this is true because "[a] question merely seeks answers and usually has no factual content." *United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003). But a questions might contain an assertion within it, and when it does, it is properly excluded as hearsay. By testifying that a physician asked how he fractured his wrist, Martin seeks to sneak in the assertion that his wrist was fractured while avoiding the rules against hearsay. If this were not true, it's unclear how the testimony would be relevant to the case at all. The factual issue is whether or not Martin's wrist was actually fractured, and testimony that a physician asked him how he fractured it is only relevant to the extent that it implicitly asserts this fact.

Nor can this testimony be admitted through the exception found in Rule 803(4)(a). The rule permits statements made for a medical diagnosis or treatment even if they are hearsay. This rule is justified on the grounds that a statement made by a patient to a medical professional "for the purposes of diagnosis or treatment are considered exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper care." *Field v. Trigg Cnty. Hosp. Inc.*, 386 F.3d 729, 735 (6th Cir.

14

2004) (quoting *White v. Illinois*, 502 U.S. 346, 355–56 (1992)). But for this reason, "the exception [is] limited to statements made by the one actually seeking medical treatment or care," and does not apply to statements made by a physician. *Id.* at 735–36. This rule, therefore, has no applicability to the hearsay in this case.

In addition to the hearsay problems with this testimony, any attempt to prove that Martin's wrist was fractured requires expert testimony. A fractured wrist is a medical diagnosis, and medical diagnoses require testimony by an expert. *See Modrell v. Riddle*, 2012 WL 359695, at *3 (W.D. Ky. Feb 2. 2012) (prohibiting a lay witness from testifying to a "heart condition" due to the fact that this requires expert testimony).

### *3. Damages Not Disclosed During Discovery*

Finally, Patterson's last request is to limit the plaintiff from seeking more than $100,000 in compensatory damages for pain and suffering and preclude him from presenting any evidence of medical damages, which were not disclosed during discovery. According to the response memorandum filed by Patterson, both parties agree that the compensatory damages Martin seeks should be capped at $100,000 and that he cannot offer evidence of medical damages. (DE 61, at 7). Because the parties appear in agreement on this issue, the motion will be denied as moot and Patterson may reassert at a later date it if necessary.[5]

* * *

Accordingly, and for the above-stated reasons, **IT IS ORDERED** that

1. Martin's motion in limine (DE 38) is **DENIED**;

---

[5] As noted in the memoranda submitted by both parties, the issue of punitive damages will be reserved for a later date.

2. Patterson's motion in limine (DE 44) is **GRANTED** as to his request that Martin be precluded under collateral estoppel from introducing any evidence intended to contradict the fact that he resisted arrest and that Martin be precluded from introducing hearsay evidence by a lay witness intended to prove that his wrist was fractured;

3. Patterson's motion in limine (DE 44) is otherwise **DENIED**;

4. Patterson's motion to exclude the Shell Mart video (DE 55) is **DENIED AS MOOT**;

5. Martin's second motion in limine (DE 57) to prevent Patterson from introducing evidence related to his resisting arrest delinquency is **DENIED**.

Dated this 24th day of February, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY